IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-02268-PSF-CBS

VALERIE L. JONES, as an individual, as a co-owner and operator of PARK AVENUE DANCE WORKS, INC.;
JOHN I. O'HAGAN WARD, as an individual, as a co-owner and operator of PARK AVENUE DANCE WORKS, INC.;
BENNETT M. HODGINS, as an individual; and
PARK AVENUE DANCE WORKS, INC., as a corporation,

     Plaintiffs,

v.

MAURICE HAGA, as an individual;
JACQUELINE HAGA, as an individual;
MARISA HAGA, as an individual;
A.H., as an individual;
GENEVIEVE JASLOWSKI, as an individual;
RUSSELL HARVEY, as an individual;
MARGO LANGLEY, as an individual;
ALLYSON BRADLEY, as an individual;
JANYNE MARULLO, a/k/a JANYNE YEHLING, as an individual;
TIM FRATES, as an individual and in his official capacity as General Manager of the Montrose Daily Press;
CATHERINE FRATES, as an individual;
SCOTT SCHWEBKE, as an individual and in his official capacity as Senior Writer for the Montrose Daily Press;
STEVEN WOODY, as an individual and Publisher of the Montrose Daily Press;
THE MONTROSE DAILY PRESS, as a subsidiary of WICK COMMUNICATIONS CO.;
CITY OF MONTROSE and MONTROSE POLICE DEPARTMENT, as an agency of the City of Montrose;
BLAINE HALL, as an individual and in his official capacity as a police officer of the Montrose Police Department,

     Defendants.

**ORDER ON PENDING MOTIONS**

This matter is before the Court on the following pending motions: Defendants Margo Langley's and Allyson Bradley's Motion to Dismiss (Dkt. # 55), filed February 15, 2006; Defendants City of Montrose and Blaine Hall's Motion to Dismiss Amended Complaint (Dkt. # 70), filed February 27, 2006; Defendants Dominic Mattvi and Matt Carrington's Motion to Strike Plaintiff's Amended Complaint (Dkt. # 71), filed February 27, 2006; Defendants Montrose Daily Press, Tim Frates, Catherine Frates, Scott Schwebke and Stephen Woody's Second Motion to Dismiss for Lack of Jurisdiction (Dkt. # 76), filed March 2, 2006; Defendants Montrose Daily Press, Tim Frates, Catherine Frates, Scott Schwebke and Steven Woody's Second Motion to Dismiss Party Pursuant to F.R.Civ.P. 12(b)(6) (Dkt. # 77), filed March 2, 2006; Defendants Maurice Haga, Jacqueline Haga, Marisa Haga and A.H.'s First Motion to Dismiss (Dkt. # 127), filed April 6, 2006; Plaintiffs' Motion for Default Judgment as to Defendant Genevieve Jaslowski (Dkt. # 159), filed May 30, 2006; the filing on behalf of Defendant Genevieve Jaslowski that arguably can be construed as a motion to dismiss (Dkt. # 168), filed June 9, 2006; City of Montrose and Blaine Hall's Reaffirmation of Motions to Dismiss (Dkt. # 171), filed June 14, 2006; Langley and Bradley's Amended and Supplemental Motion to Dismiss (Dkt. # 172), filed June 15, 2006; and Maurice Haga, Jacqueline Haga, Marisa Haga and A.H.'s Supplement to Motion to Dismiss (Dkt. # 174), filed June 16, 2006. This Court held a hearing on these motions on July 6, 2006.

**I. FACTUAL BACKGROUND**

Plaintiffs' case stems from a series of events connected to their dance school, Park Avenue Dance Works ("PADW").  Valerie Jones and John Ward, a married couple, began PADW in Montrose, Colorado in 1997.  Plaintiff Bennett Hodgins is a former student of PADW.  Originally filed on November 9, 2005, plaintiffs have amended their complaint twice, most recently on June 6, 2006 after the Magistrate Judge accepted their Second Amended Complaint.  Plaintiffs in their Second Amended Complaint allege federal jurisdiction on the basis of a constitutional claim asserted by one of them, as well as pursuant to 28 U.S.C. § 1332, diversity of citizenship, and 28 U.S.C. § 1367, supplemental jurisdiction.  Plaintiffs claim that Jones and Ward were residents of Mexico at the time of filing, although Plaintiff Hodgins and Plaintiff PADW were both residents of Colorado at the time of filing.  Defendants all appear to have been residents of Colorado at the time of filing.

In April of 2003, Plaintiffs Jones and Ward hosted Defendants A.H. and Jaslowski, Plaintiff Hodgins, and nonparty Thomas Stewart at their home.  According to Ward, A.H. and Jaslowski, both students at PADW, requested that Ward take their photo in various attire and topless–including in the hot tub and shower.

On October 3, 2003, A.H. and Hodgins allegedly played a practical joke on nonparty Peter Marullo and his girlfriend at the time, Defendant Marisa Haga, older sister of A.H.  Plaintiffs claim that Hodgins, who was 19 years old at the time, and A.H., age 14, made up a story about the two of them having sexual intercourse.  Plaintiffs allege that although they revealed it to be a joke, A.H.'s mother, Jacqueline Haga,

3

became enraged and interrogated A.H. until she "lied and said that it did happen." Sec. Am. Compl. at ¶ 39. Jacqueline Haga became angry with Plaintiff Jones when Ms. Jones did not believe that anything had actually happened. *Id.* at ¶ 40. Defendant Russell Harvey, boyfriend of Jacqueline Haga, allegedly contacted the Ouray County Sheriff's Office, in particular Defendant Sheriff Mattivi,[1] and "maliciously and falsely reported that Plaintiff Hodgins raped Defendant A.H." *Id.* at ¶ 45. An arrest warrant was issued for Hodgins.

On October 10, 2003, plaintiffs contend that Defendants Maurice Haga, Jacqueline Haga, A.H., Marisa Haga, Harvey and Janyne Marullo met at Maurice Haga's home and discussed the alleged sexual encounter between A.H. and Hodgins. At this meeting, Marisa Haga revealed for the first time that Plaintiff Ward had taken pictures of A.H. and Jaslowski. Plaintiffs contend that "[a]t this point the afore-mentioned Defendants began to conspire about ways and means of destroying Plaintiffs PADW, Jones, Ward, and Hodgins by, amongst other methods, tortiously interfering with contracts between Plaintiff PADW and its clients, bringing criminal charges against Plaintiffs Ward, Jones, and Hodgins, calling parents of students and making false and inflammatory statements about pedophilia, sexual assault and other crimes of a sexual nature."[2] *Id.* at ¶ 46. Plaintiffs' complaint details some ways

---

[1] All claims against Defendants Mattivi and Carrington of the Ouray County Sheriff's office were dismissed by stipulation filed March 14, 2006 (Dkt. # 98).

[2] A nonparty attendee of the meeting, Rayleene Long, allegedly revealed the contents of the meeting to Plaintiff Jones in November 2003. Sec. Am. Compl. at ¶ 46.

4

defendants allegedly interfered with contractual obligations and made defamatory statements.

On October 11, 2003, Maurice Haga filed a "malicious, unverified and untrue report" against Ward in connection with the picture-taking incident. *Id.* at ¶ 49. Defendant Hall, a Montrose police officer, apparently headed the ensuing investigation. Ward contends that Hall violated his constitutional rights through his investigation and that Defendant City of Montrose failed to adequately train, supervise, discipline or properly hire its officers. During the investigation, Officer Hall allegedly informed Maurice Haga "against police policy" when a search warrant would be served upon the home of Jones and Ward. Maurice Haga allegedly telephoned Defendant Daily Press "to cover the raid so as to further humiliate Plaintiffs Jones and Ward." *Id.* at ¶ 67. Eventually, Ward pled no contest to two non-sexual counts of contributing to the delinquency of a minor and one non-sexual count of harassment, in September 2004, "because he believed he could not get a fair jury trial due to the vast amount of biased and negative publicity created by Defendants Daily Press and Woody, and the authorities." *Id.* at ¶ 98. Apparently his no contest plea was accepted by the state district court.

On October 16, 2003, Hodgins was arrested by Ouray County Sheriff's Department employees, Defendants Mattivi and Carrington, in connection with the alleged sexual encounter with A.H. *Id.* at ¶¶ 76-77. According to plaintiffs, Daily Press and its publisher, Defendant Woody, printed malicious and frequent articles connecting the Hodgins investigation and PADW, Jones and Ward. *Id.* at ¶ 78. Further, Daily

Press allegedly mentioned Jones and PADW in its articles about the Ward investigation, specifically senior writer Defendant Schwebke.  *Id.* at ¶¶ 78, 85-90, 110-12.  Eventually, Hodgins's complaint was dismissed on a motion for the prosecution, on November 4, 2004.  *Id.* at ¶ 100.

In December of 2003, Plaintiff Ward contends that he learned of a conspiracy between Defendants Langley and Bradley, former PADW dance students, to file false accusations and a false police report against him.  *Id.* at ¶¶ 82-84.  Langley and Bradley made statements to Officer Hall accusing Ward of inappropriate sexual behavior.  Plaintiffs contend that Defendant Catherine Frates–an instructor at PADW–was interested in establishing a rival dance studio, and that her husband, Defendant Tim Frates–general manager of Daily Press–helped her by "engag[ing] in a conspiracy to damage the reputations of Plaintiffs Jones, Ward, and PADW."  *Id.* at ¶ 113.

Plaintiffs bring the following claims for relief: First Claim for malicious prosecution by Hodgins against A.H. and Harvery; Second Claim for abuse of process by Hodgins against Marullo (in connection with a complaint filed against Hodgins accusing him of violating a restraining order); Third Claim for civil conspiracy by Jones, Ward and PADW against Maurice Haga, Jacqueline Haga, Marisa Haga, A.H., Jaslowski, Harvey, Marullo and Hall; Fourth Claim for civil conspiracy by Jones, Ward and PADW against Tim Frates, Catherine Frates, Schwebke, Woody and the Daily Press; Fifth Claim for outrageous conduct and intentional infliction of emotional distress by Ward against Langley and Bradley; Sixth Claim for abuse of process by Ward

6

against Langley and Bradley; Seventh Claim for civil conspiracy by Ward against Langley and Bradley; Eighth Claim (the sole federal claim) pursuant to 42 U.S.C. § 1983 by Ward against the City of Montrose for violations of Ward's First, Fourth, Fifth and Fourteenth Amendment rights; Ninth Claim for tortious interference with prospective financial advantage by Jones, Ward and PADW against Jacqueline Haga, Tim Frates, Schwebke, Woody and the Daily Press; Tenth Claim for defamation *per se* by Ward against Tim Frates, Schwebke, Woody and the Daily Press; and Eleventh Claim for intentional interference with contractual obligations by Jones, Ward and PADW against Jacqueline Haga, Harvey, Hall, Tim Frates, Catherine Frates, Schwebke, Woody and the Daily Press.

## II. MOTIONS TO DISMISS

### A. Federal Claim

The sole federal claim in plaintiffs' 56-page complaint, containing 195 paragraphs of averments and a prayer for relief consisting of 14 paragraphs, is their Eighth Claim for Relief–a claim by only Plaintiff Ward against only Defendant City of Montrose and the Montrose Police Department for violations of Ward's constitutional rights in connection with the criminal investigation. The City of Montrose has moved to dismiss this claim pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim. According to the City, the claim is barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), Ward has not adequately pled an underlying constitutional violation by Officer Hall, and Ward has not adequately pled a custom or policy giving rise to any constitutional violation. City's Mot. Dis. at ¶¶ 2, 19, 22, 27 (Dkt. # 70).

### B. Standard of Review

Under F.R.Civ.P. 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Stated another way, if the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. A court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998). In considering such a motion, any reasonable inferences must be construed in the plaintiff's favor. *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1203 (10th Cir. 1998).

### C. Analysis

Ward contends that the City failed to properly train and supervise Defendant Officer Hall, resulting in an improper investigation and Ward's eventual arrest which was allegedly not supported by probable cause. A § 1983 claim against a municipality, such as this one, can lie only for a violation of constitutional rights that reflect government custom or policy. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Courts employ a two-pronged analysis for determining whether a plaintiff has stated such a claim: first, has an official committed a constitutional violation and second, was a policy or custom the moving force behind the constitutional deprivation. *See Summum v. City of Ogden*, 297 F.3d 995, 1000-01

(10th Cir. 2002)*; Myers v. Okla. County Bd. of County Comm'rs.*, 151 F.3d 1313, 1316 (10th Cir. 1998).

Although Ward's Eighth Claim for Relief alleges that his First, Fourth, Fifth and Fourteenth Amendment rights were violated, the only constitutional violation he specifically describes that could support municipal liability is a Fourth Amendment violation by Officer Hall for issuing an affidavit for the search and seizure of Ward without probable cause, Sec. Am. Compl. at ¶¶ 73-74; Pl.'s Resp. to City's Mot. Dis. at 22 (Dkt. # 104) (contending that "at a minimum" the Eighth Claim implicates the Fourth Amendment), and for the continuation of Ward's prosecution in the absence of probable cause, Pl.'s Resp. to City's Mot. Dis. at 22 (*Monell* liability is proper because of the absence of probable cause for the continuing prosecution).  However, such alleged violations by Officer Hall do not state a constitutional violation where Ward ultimately pled no contest to three criminal counts based upon what prompted this investigation.  Under Colorado law, a "conviction" includes pleas of no contest accepted by a court.  *See e.g.* C.R.S. §§ 18-18-432(1)(a), 18-19-102(1), 18-21-102(1), 18-22-102(1).  The Tenth Circuit in *Howard v. Dickerson* noted that "a conviction represents a defense to a § 1983 action asserting arrest without probable cause."  34 F.3d 978, 981 n.2 (10th Cir. 1994) (citing *Cameron v. Fogarty*, 806 F.2d 380, 389 (2d Cir. 1986) ("where law enforcement officials have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause")).

While Ward did not plead guilty to a sex crime, from all indications in the record the information leading up to Officer Hall's actions against Ward formed the basis of his delinquency contribution and harassment convictions. Under such circumstances given the significant overlap between the criminal conduct admitted to by Ward and the allegedly hyperbolic charges Officer Hall supposedly investigated unconstitutionally, a Fourth Amendment violation is not stated. *See Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) (an arrest is constitutional as long as the officer "possessed knowledge of evidence that would provide probable cause to arrest [plaintiff] on *some* ground") (emphasis in original). Ward admits that a report was provided to the City of Montrose police department containing specific allegations of wrongdoing–including taking inappropriate pictures of minors–and that Officer Hall spoke with certain witnesses to the alleged wrongdoing. Sec. Am. Compl. at ¶¶ 49, 73-75. Such information can support the finding of probable cause that a crime was committed. Ward alleges only that Officer Hall lacked probable cause that a sexual assault had occurred, not that Hall lacked probable cause to support an arrest for any crime based on many of the same alleged facts, such as contributing to the delinquency of a minor and harassment, to which Ward eventually pled no contest. *See id.* at ¶¶ 54, 73-74, 98; *see also Apodaca*, 443 F.3d at 1289 ("An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' the arrest.") (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (a police officer's subjective reason for making an

arrest need not be the criminal offense as to which the known facts provide probable cause)).  Even accepting as true all well-pleaded facts and viewing them in the light most favorable to plaintiffs, Ward has not averred circumstances suggesting that his arrest for the crimes to which he pled guilty was unjustified.  Thus facts supporting a *Monell* claim of liability against the City of Montrose simply have not been sufficiently pled.

The Court also notes that Ward avers no conduct by Officer Hall that would have been a § 1983 violation had Officer Hall investigated only the charges to which Ward pled guilty.  Thus, no constitutional overreaching by Ward has been pled.  Contributing to the delinquency of a minor and harassment appear essentially to be lesser included offenses associated with possible sex crimes based on taking photographs of minors in various states of nudity.

Caselaw permitting a § 1983 suit alleging Fourth Amendment violations despite pleading guilty to the underlying charge is distinguishable.  *See Haring v. Prosise*, 462 U.S. 306, 316, 321-23  (1983) (§ 1983 plaintiff has not waived his Fourth Amendment claims by pleading guilty in state court and a state court conviction does not preclude a plaintiff from seeking to recover damages under § 1983 for an alleged Fourth Amendment violation).  *Haring* simply allows such a claim to be made, where in the instant case, Ward has not adequately pled the alleged Fourth Amendment violation permitting his claim to continue.

Irrespective of Ward's no contest plea and apparent acknowledgment of probable cause for harassment or delinquency contribution, his allegations, taken as

true, cannot support a claim for a Fourth Amendment violation. Even assuming that defendants engaged in a conspiracy against Ward and made false accusations against him, Ward does not allege any facts suggesting that Officer Hall knew or should have known that the information contained in the arrest warrant was false, or that it recklessly disregarded anyone's truthfulness. *See Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 114 (10th Cir. 1994) (stating the intentionality or recklessness standard for finding a Fourth Amendment violation when challenging an arrest supported by a warrant for lack of probable cause). By noting this pleading deficiency as to the Fourth Amendment violation, the Court of course takes no position on the merits of plaintiffs' other claims, including the direct claims against Officer Hall.

Ward's general claim of a poor investigation by Officer Hall due to a failure on the City's part to properly train him, *see* Sec. Am. Compl. at ¶¶ 52-56, 104, also does not state a constitutional violation sufficient to impose municipal liability. Accepting as true Ward's contention that as a result of a failure to train by the City, Officer Hall did not know the proper elements for the crime of sexual assault on a child and failed to exercise caution and diligence in investigating Ward, a municipal liability claim still cannot stand as there is no underlying constitutional violation. Finally, Ward's claim that no probable cause existed to support his continuing post-arrest prosecution, *see* Pl.'s Resp. to City's Mot. Dis. at 22, does not appear to properly lie against the City or even Officer Hall, but rather appears to implicate prosecutorial discretion and arguably could be properly directed against the District Attorney's Office. Because Ward has not stated a valid underlying constitutional claim to support a *Monell* claim of municipal

liability against the City of Montrose, plaintiffs' eighth claim for relief is dismissed for failure to state a claim.[3]

## B. State Claims

Plaintiffs have alleged jurisdiction over their state law claims pursuant to 28 U.S.C. § 1332, diversity of citizenship, and 28 U.S.C. § 1367, supplemental jurisdiction. However, plaintiffs through counsel distanced themselves from their diversity jurisdiction position at the July 5, 2006 hearing before this Court. It is clear from the face of the Second Amended Complaint that diversity jurisdiction does not lie. Plaintiffs Hodgins and PADW are both citizens of Colorado,[4] as are all defendants. *Id.* at ¶¶ 7-26. Diversity jurisdiction is proper only where diversity of citizenship is complete– meaning that no plaintiff and no defendant are citizens of the same state. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Therefore, supplemental jurisdiction is the only basis for plaintiffs' state law claims being properly before this Court.

Under 28 U.S.C. § 1367(a), a federal court with original jurisdiction over a claim also has supplemental jurisdiction over state law claims that "are so related to claims

---

[3] Despite defendants' contention to the contrary, *Heck* does not bar the instant claim, as Ward is not challenging his conviction or sentence, but rather the alleged violation of his Fourth Amendment rights. *See Laurino v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000) ("a suspect's proof that police lacked probable cause to arrest him does not necessarily imply the invalidity or unlawfulness of his conviction for the underlying offense," and thus *Heck* does not apply). A detailed *Heck* analysis, however, is unnecessary here, where Plaintiff Ward has failed to state a claim for relief under *Monell*.

[4] Hodgins and PADW were citizens of Colorado at least as of the time of filing this action, although that citizenship may have later changed. *See Freeport-McMoRan, Inc., v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (noting that diversity of citizenship is determined at the time the suit is filed, and subsequent events do not change that determination).

13

in the action within such original jurisdiction that they form part of the same case or controversy." Plaintiffs contend that the numerous state law claims they raise form the same case or controversy as Ward's § 1983 failure to train claim "and arose under a common nucleus of operative facts." Sec. Am. Compl. at ¶ 3.

Here, plaintiffs have brought 11 causes of action asserted by four plaintiffs against 15 defendants, and only a single plaintiff and a single defendant are involved in the sole federal claim. Moreover, that defendant is not implicated in any other claim. Most importantly, in order to have succeeded on their now-dismissed § 1983 municipal liability claim, Plaintiff Ward would have had to demonstrate the existence of a preexisting governmental policy or custom leading to the violation of his constitutional rights, *see Monell*, 436 U.S. at 690-91, or such inadequacy of police training as to constitute deliberate indifference, *see City of Canton v. Harris*, 489 U.S. 378, 388 (1989). An investigation into the historic workings and policies of a municipality's police force would not implicate the factual nucleus of whether other defendants engaged in civil conspiracy and tortiously interfered with any plaintiff's contractual relations. No actions by the City of Montrose, specifically its policies or training or lack thereof, are implicated by the other state law claims. The exercise of supplemental jurisdiction thus cannot be justified in the face of such an insufficient factual interrelationship between the federal claim and the other causes of action.

Even if this Court were to find that a "common nucleus of operative fact" exists, however, "federal jurisdiction is not mandatory over pendent claims or parties." *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir.

2004).  Under §1367(c), a district court "may decline to exercise supplemental jurisdiction, and the Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion."  *Id.* (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

As is now relevant here, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."  This dismissal language is discretionary, rather than mandatory.  The Supreme Court's language in *Gibbs*, which predates the 1990 enactment of 28 U.S.C. §1367 that superceded the common law pendent jurisdiction doctrine, suggested a more mandatory approach, stating that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726.  A subsequent Supreme Court decision, yet one still predating the enactment of § 1367, tempered this directive somewhat, instructing that "a federal court should consider and weigh in each case, and at every state of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims.  When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing

the case without prejudice." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).

Here, the sole federal claim has now dropped out of the lawsuit prior to the start of discovery. Further, even if the federal claim were to remain, another discretionary basis for declining supplemental jurisdiction exists. Under 28 U.S.C. § 1367(c)(2), a district court may decline to exercise supplemental jurisdiction if the state law claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." Here, where only one of 11 claims involves a federal question and where that claim is asserted by only one of four plaintiffs and against only a single defendant not named in any other claim, the state law claims can be fairly said to predominate over the federal claim. *See also Gibbs*, 383 U.S. at 726-27 ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."). In light of such a balance of factors, this Court in the alternative would exercise its discretion and decline to exercise supplemental jurisdiction in this case. Plaintiffs' state law claims are thus dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, Defendant City of Montrose's Motions to Dismiss (Dkt. ## 70 and 171) are GRANTED and plaintiffs' eighth claim for relief is DISMISSED for failure to state a claim. Additionally, plaintiffs' remaining claims are DISMISSED

without prejudice and all other pending motions are DENIED as moot.  This case is DISMISSED in its entirety.

DATED: July 17, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge